Estill Sargent and Daisy Sargent v. Commissioner.
Sargent v. Commissioner
Docket No. 383-69.
United States Tax Court
T.C. Memo 1970-214; 1970 Tax Ct. Memo LEXIS 149; 29 T.C.M. (CCH) 941; T.C.M. (RIA) 70214; July 27, 1970, Filed Irwin G. Waterman 600 Marion E. Taylor Bldg., Louisville, Ky., for the petitioners. W. Gerald Thornton, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $5,617.56 in petitioners' income tax for their taxable year ended on February 28, 1966. Petitioners claim that there is no tax due and that they are entitled to a refund in the amount of $501.46, *151 the entire amount of the tax paid for the year in question. The issues for our determination are (1) the amount of the basis of EstillSargent's partnership interest and (2) whether the partnership of EstillSargent and his son terminated as of December 31, 1965 or February 28, 1966. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners are husband and wife, who had their legal residence in Paris, Kentucky, at the time of filing their petition herein. They filed a joint Federal income tax return for their taxable year ended February 28, 1966 with the district director of internal revenue, Louisville, Kentucky. Daisy Sargent is a party hereto only because she filed such return with her husband. Reference to petitioner shall be deemed to refer to EstillSargent. At all pertinent times, petitioner was engaged in the business of farming. On January 28, 1959, petitioner loaned $45,000 to W. J. Barr, Jr. (hereinafter Barr) and J. W. Sargent (hereinafter J. W.), petitioner's son. Barr and J. W. executed a note in the amount of $45,000 payable to petitioner in 12 months and bearing interest at the rate of 5 1/4 percent per year. On the same *152 date, petitioner issued his check in the amount of $45,000 to Wilson Bros., a farm implement dealership in Paris, Kentucky, franchised by International Harvester (hereinafter International), for the purchase of its business on behalf of Barr and J. W. Thereafter, Barr and J. W. operated the business, then known as Barr & Sargent Implement Co., as equal partners, although they had no written partnership agreement. The books of the partnership did not reflect the $45,000 note executed by the partners to petitioner. Petitioner did not participate in the conduct of the business of the partnership. The note executed by Barr and J. W. in favor of petitioner was not paid when due on January 28, 1960, but some payments and credits were made which reduced the outstanding amount to $35,319.85 as of January 1, 1962. On January 29, 1961, April 10, 1961, and May 3, 1961, Barr, J. W., and petitioner executed three promissory notes payable to the order of the Peoples Deposit Bank and Trust Company, each in the amount of $4,000, the proceeds of which were used in the partnership business of Barr and Sargent. On November 30, 1961, petitioner delivered his check in the amount of $8,363.26 to the *153 partnership as a loan to provide funds for the payment of an obligation to International. International allowed a discount of the obligation of the partnership in the amount of $1,956.24, which was applied by the partnership to reduce the loan from the petitioner as shown on its books to $6,407.02, although no payment was made to petitioner. Because of the continuing indebtedness and the repeated need of the partnership for additional capital, petitioner approached Barr in November 1961 with respect to purchasing the Sargent interest in the partnership or leaving the partnership. As a 942 result, a letter was written, addressed to petitioner and J. W. and signed by Barr, which provided that Barr would either purchase the Sargent interest, paying $53,407.02 in cash plus accrued interest, or sell his own interest to the Sargents for $1.00 on or before January 1, 1962. Barr was unable to raise the necessary funds by January 1, 1962, and petitioner took over Barr's interest in the partnership. At that time, petitioner cancelled Barr's share of the unpaid balance on the $45,000 note, which amounted to $17,659.92. No written contract was made to reflect the transaction, and the $45,000 *154 note held by petitioner was not physically delivered to Barr upon his departure. At the time, Barr's capital account in the Barr and Sargent partnership equalled $11,336.29. Petitioner's assumption of Barr's interest in the partnership was reflected on the partnership books as follows: Investment - W. J. Barr…$11,336.29 Investment - EstillSargent…$11,336.29 To record transfer of W. J. Barr interest to EstillSargent
At the same time, the following entries were made on the books of the partnership to reflect the handling of the loans of $12,000 obtained by the partnership from the Peoples Deposit Bank and Trust Company and the loan of $8,363.26 from petitioner, reduced to $6,407.02 as aforesaid. Notes payable - Bank…$12,000.00 Notes payable - EstillSargent…6,407.02 Investment - EstillSargent…$9,203.51 Investment - J. W. Sargent…9,203.51 To record partnership liabilities assumed by partners Commencing January 1, 1962, the business was operated as a 50-50 partnership consisting of petitioner and J. W. under the name of Sargent Implement Sales. Petitioner continued his vocation of farming and did not participate in the operation or management of the partnership, *155 this responsibility being left entirely to J. W. An accountant was engaged to maintain the necessary books and records. Neither partner was familiar with the entries made therein. Sargent Implement Sales had taxable income or loss as follows: Year
Amount
1962
$3,941.99
1963
8,302.22
1964
$ 8,028.78
1965
(3,205.61)
By December 31, 1965, petitioner was dissatisfied with the financial condition and profitability of Sargent Implement Sales. Consequently, petitioner informed J. W. that he was liquidating the partnership. J. W. was opposed to this decision, but steps were taken to wind up the business. As of December 31, 1965, the balance sheet of Sargent Implement Sales showed the following: *10 Assets
Cash
$ 1,359.43
Receivables (less reserve for bad debts)
5,583.07
Inventories
37,227.84
Fixed assets (less reserve for de- preciation) 3,072.83
Total
$47,243.17
Liabilities
Accounts payable
$ 6,515.01
Accrued taxes
579.55
Partners' capital account 40,148.61
Total
$47,243.17
The partners' capital account was allocated $20,806.59 to petitioner and $19,342.02 to J. W. Respondent has conceded that the amount allocated *156 to petitioner should be increased to $30,010.10, representing the remaining one-half of the $12,000 loans obtained by the predecessor partnership from Peoples Deposit Bank and Trust Company and the remaining one-half of the $6,407.02 reduced amount of the loan by petitioner to the predecessor partnership. [1]
Upon determining to liquidate the business, petitioner engaged a firm of real estate and business brokers to hold a public auction in order to liquidate the physical assets. The sale, which was held on January 13 and 14, 1966, was advertised in both the Paris and Lexington, Kentucky, newspapers, which advertisement listed petitioner as the owner of the business. During January 1966, a portion of the inventory was returned to International. The proceeds of both the returned assets and the auction sale were paid to the petitioner and deposited into his personal bank account. During the period January 1 to February 28, 1966, petitioner received in cash from these items and certain other miscellaneous items in the aggregate *157 amount of $22,240.96. 943 Prior to January 1, 1962, J. W. received compensation of $100 per week from the partnership. Thereafter and through January 1966, he received $75 per week. After the auction sale, J. W. had the task of collecting the accounts receivable, for which he received a commission of 25 percent. After January 1, 1966, petitioner paid obligations of the partnership from his personal bank account totalling $5,404.46. During January and February 1966, J. W. drew 26 checks totalling $2,185.60 in the name of Sargent Implement Sales. He also wrote four checks on the bank account of the partnership payable to himself, which totalled $375.00. The final check on this account was drawn by petitioner on August 11, 1966, in the amount of $107.89 and payable to himself. Sargent Implement Sales filed U.S. Partnership Returns of Income, Form 1065, for the calendar years 1962 through 1965 and for the period January 1, 1966 through February 28, 1966 with the district director of internal revenue, Louisville, Kentucky. The 1966 return was designated a "Final Return," petitioner and J. W. were listed as the partners, and a loss for the period of $22,223.92 was allocated entirely *158 to petitioner. Petitioner reflected this amount as an ordinary loss on his Federal income tax return for his fiscal year ended February 28, 1966. Ultimate Findings of Fact 1. The basis of petitioner's partnership interest should be increased by the amount of $9,203.51, conceded by respondent; by the amount of $6,323.63, representing the difference between $11,336.29, the amount of Barr's capital account as of January 1, 1962, and $17,659.92; and by the amount of $1,956.24, representing an improper reduction in a loan by petitioner in the amount of $8,363.26, which loan was converted into a contribution to capital by petitioner. 2. The partnership of petitioner and J. W. terminated for Federal tax purposes on February 28, 1966. Opinion One issue herein involves the determination of the basis of petitioner's partnership interest. The dispute centers around two questions: (a) whether the amount to be included as petitioner's cost of acquisition from Barr should be the amount of Barr's capital account as shown on the books of the partnership between Barr and J. W., to wit, $11,336.29, or the amount of Barr's indebtedness to petitioner at the time of acquisition, to wit, $17,659.92, *159 and (b) whether the basis should be increased by $1,956.24, representing the difference between the amount of $8,363.26 actually loaned by petitioner to the Barr and Sargent partnership and $6,407.02, which is the amount of the loan as allegedly reduced. With respect to the first question, the parties are not in dispute as to the applicable rule of law, but rather as to its application to the facts and circumstances of this case. Section 742[2] specifies that the basis of a transferee partner's interest shall be determined pursuant to part II of subchapter O (sections 1011-1023). Section 1012 sets forth the fundamental proposition that "[the] basis of property shall be the cost of such property." Thus, the determination of petitioner's cost is the crux of the dispute. The established rule of law is that when a creditor receives property on account of a debt, the debt is considered paid only to the extent *160 of the fair market value of the property so acquired; that value becomes the cost of the property and any excess indebtedness may be deducted as a bad debt pursuant to section 166 to the extent that the taxpayer can establish its worthlessness. See, e.g., Commissioner v. Spreckels, 120 F. 2d 517 (C.A. 9, 1941), affirming a Memorandum Opinion of this Court; Achilles H. Kohn, 16 T.C. 960, 962 (1951), affd. 197 F. 2d 480 (C.A. 2, 1952). Respondent has determined that Barr's partnership interest did not have a fair market value in excess of the amount of his capital account as shown on the books of Barr and Sargent. Petitioners have the burden of proof. Rule 32, Tax Court Rules of Practice. Based upon the entire record herein, and in particular the facts that the transaction between Barr and petitioner was arm's-length and that the business seems to have been enjoying some degree of profitability at the time of petitioner's acquisition of Barr's partnership interest, we conclude that the fair market value of that interest was equal to the unpaid balance of Barr's indebtedness to petitioner on January 1, 1962. [3]
*161 944 The second question as to petitioner's basis involves $1,956.24, representing a discount allowed to Barr and Sargent on purchases from International. The discount was applied on the books of Barr and Sargent in reduction of a loan of $8,363.26 from petitioner, which loan was transferred to petitioner's capital account at the time he acquired Barr's partnership interest. No payment of the $1,956.24 was ever made to petitioner. Under these circumstances, we do not regard the book entries as controlling. Compare Helvering v. Midland Ins. Co., 300 U.S. 216 (1937); C. H. Wentworth, 25 T.C. 1210 (1956), affd. 244 F. 2d 874 (C.A. 9, 1957). We hold that petitioner's basis should be increased by the amount of the discount. The other issue involves a determination of whether the partnership of petitioner and his son J. W. terminated as of December 31, 1965, when petitioner decided to liquidate the business, or on February 28, 1966. The question is essentially one of fact which must be resolved upon the basis of an analysis of the various subsidiary elements of proof. Here again the burden is on the petitioners to sustain their contention *162 that the partnership terminated on December 31, 1965. The evidence indicates that petitioner determined that the business should be liquidated, that he arranged for the auction sale, the advertisements for which listed him as owner, and that the proceeds of the auction sale and the return of merchandise were deposited into petitioner's personal bank account, from which he discharged liabilities of the partnership totalling $5,404.46. On the other hand, during January and February 1966, J. W. wrote 26 checks totalling $2,185.60 against an account which remained in the name of the partnership and we know that certain aspects of the business continued for a limited period. Moreover, a partnership return was filed for the period January 1 - February 28, 1966, although the entire loss for that period was allocated to petitioner on the return. It is clear that both petitioner and J. W. regarded the control of the business as being vested in petitioner and that petitioner was entitled to the realizable value of the assets by virtue of his large investment. Both were men of limited business experience who were accustomed to operating without resort to formal agreements - we note that the *163 only written instrument in connection with the Sargents' association with the farm implement business was the letter from Barr to petitioner with respect to the sale of Barr's partnership interest. In this context, we think that their testimony that each regarded the other as his partner subsequent to December 31, 1965 should be accorded considerable weight. Cf. Marko Durovic, 54 T.C. - (June 24, 1970); Claire Giannini Hoffman, 2 T.C. 1160, 1172-1173 (1943), affirmed sub nom. Giannini v. Commissioner, 148 F. 2d 285 (C.A. 9, 1945). Based upon the foregoing and our evaluation of the entire record, we conclude that the decision taken on December 31, 1965 was simply to stop the ongoing business activities of Sargent Sales Company and that the partnership between petitioner and J. W. continued in existence for purposes of liquidation until February 28, 1966 and was terminated on that date. [4] Petitioner is accordingly entitled to an ordinary loss deduction of only one-half the partnership loss for the short period. [5]
*164 In order to facilitate the entry of decision herein under Rule 50, we recapitulate our conclusions: (a) Basis of petitioner's partnership interest - 945 Capital account 12/31/65
$20,806.59
Additional basis conceded by respondent
9,203.51
Additional basis on acquisi- tion of Barr's interest
6,323.63
Unauthorized application of indebtedness
1,956.24
Capital contribution 1/2/66 to 2/28/66 5,404.46
Total
$43,694.43
(b) From the foregoing basis of $43,694.43, there is to be deducted the sum of $11,111.96, representing petitioner's ordinary loss deduction for one-half the partnership loss for the period 1/2/66 to 2/28/66, leaving a remaining basis of $32,582.47. See section 705(a)(2). *
Decision will be entered under Rule 50. Footnotes
1. Since these amounts were reflected in J. W.'S CAPITAL ACCOUNT ON THE BOOKS OF THE PARTNERSHIP, THAT ACCOUNT WOULD PRESUMABLY BE CORRESPONDINGLY REDUCED.↩
2. All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended. ↩
3. In view of our conclusion, we refrain from dealing with petitioners' contention that Barr's partnership interest had no fair market value and that, under such circumstances, an exception to the general rule is operative and compels equating the cost of the property to the cancelled indebtedness, an exception which involves a difficult application of burden of proof requirements. Compare Arc Realty Company v. Commissioner, 295 F. 2d 98 (C.A. 8, 1961); Gould Securities Co. v. United States, 96 F. 2d 780 (C.A. 2, 1938); Philadelphia Park Amusement Co. v. United States, 126 F. Supp. 184 (Ct. Cl. 1954); Society Brand Clothes Inc., 18 T.C. 304↩ (1952).
4. Although there is evidence of some miniscule activity after this date, respondent has made no argument that the termination took place at a later point of time. ↩
5. In view of our conclusion, there was no distribution of assets in kind to petitioner and we need not deal with any question of allocation of basis among inventory, accounts receivable, and fixed assets of the partnership or the character of the gain or loss to petitioner on the disposition of these items. Secs. 1.735-1 and 1.751-1, Income Tax Regs.↩ We also note that petitioners have not argued that there was a modification of the partnership's agreement as of December 31, 1965 so as to allocate all the profit or loss to petitioner. See sec. 704(b).
*. By official Tax Court order, dated 9/18/70 and signed by Judge Tannenwald↩, paragraphs (c) and (d) were deleted. - CCH.