**UNICORE, INC., et al.,**
**Plaintiffs-Appellants,**

v.

**TENNESSEE VALLEY AUTHORITY,**
**Defendant-Appellee.**

**No. 84–5484.**

United States Court of Appeals,
Sixth Circuit.

Argued April 16, 1985.

Decided July 17, 1985.

W. Ferber Tracy, Spears, Moore, Rebman & Williams, Chattanooga, Tenn.; John Talley, Jr., Stephen Rowe, argued, and Fred McCallum, Jr., Birmingham, Ala., for plaintiffs-appellants.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel, Robert C. Glinski, argued, and Nicholas A. Della Volpe, Ralph E. Rodgers, Tennessee Valley Authority, Knoxville, Tenn., for defendant-appellee.

Before KENNEDY and CONTIE, Circuit Judges, and EDWARDS, Senior Circuit Judge.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.

The origin of this law suit is the exposure of a TVA welder to manganese fumes generated in his welding work at TVA's Bellefonte Plant at Hollywood, Alabama.

Plaintiff, Unicore, was and is a manufacturer of, among other things, manganese welding wire. This wire when used for welding gives off manganese fumes. A welder named Whisenhunt, employed by TVA at its Bellefonte Nuclear Power Plant, after a period of welding during which he used manganese welding wire produced by Unicore, became paralyzed below the waist. Whisenhunt sued Unicore and the Hobart Corporation, which manufactured the welding machine and sold the welding wire to TVA. The suit was filed in Alabama state court and the insurers of Unicore and Hobart Manufacturing Company paid Whisenhunt $625,000 apiece. This was an out of court settlement without notice to TVA. This suit is brought in Unicore's name by its insurers claiming the right to indemnification by TVA for the $625,000 which they paid to settle Whisenhunt's suit against Unicore.

Unicore claims first that it was only "passively negligent" while TVA was "ac-

tively negligent." Second, Unicore asserts an implied contract theory wherein it argues that it enjoyed a "special relationship" with TVA in which TVA undertook an obligation to provide adequate ventilation for its employees who used Unicore wire.

The first question in this case is whether we apply federal or Alabama state law. The critical events took place in Alabama and the parties both argue Alabama law as the applicable law.

The facts were stipulated before the District Court and the District Court granted summary judgment relying on Alabama law which the District Court held applied. The Court cited *Consolidated Pipe and Supply Co. v. Stockham Valves and Fittings, Inc.*, 365 So.2d 968 (Ala.1978). With respect to plaintiffs' claim for tort-based indemnity, the District Court properly looked to the tort law of Alabama. *See Jackson v. TVA*, 413 F.Supp. 1050 (M.D. Tenn.1976), *aff'd*, 595 F.2d 1120 (6th Cir. 1979).

The District Court held that Alabama's case law foreclosed the tort-based indemnity claim and held as to the implied contract theory that the plaintiffs had failed to allege facts establishing more than a vendor-vendee relationship between Unicore and TVA. The Court also said that it could find no facts pled which provided evidence of a "special relationship" which would give rise to a duty on TVA to use Unicore's product in such a way as to avoid the possibility of liability on the part of Unicore.

The stipulated facts may be recited as follows. TVA had an indefinite quantity term contract with Hobart Welder Sales of Chattanooga for the purchase of welder filler materials for five TVA nuclear power plants. In a July 15, 1977 change of contract, Unicore's V–70 welding wire became a purchaseable item under the TVA–Hobart contract. Thus, Unicore's only *direct* relationship was as vendor to Hobart, not TVA. Before adopting this change of contract, TVA sent two inspectors to Unicore's North Haven, Connecticut plant for a pre-award quality assurance survey. Such a survey is required by the Nuclear Regulatory Commission's regulations and is governed by criteria set forth in American Society of Mechanical Engineers (ASME) Code Section III, subarticle NA–3700. The TVA inspectors found the Unicore facilities adequate. After July 15, 1977, TVA purchased from Hobart a quantity of Unicore V–70 wire for use at the Bellefonte power plant, which was then under construction.

The TVA–Hobart contract specifications for mild steel electrodes for flux-cored arc welding, such as that using Unicore V–70 wire, incorporated ASME specifications for both maximum allowable manganese content of welded deposit and minimum warnings on spools of welding wire purchased. The maximum manganese content of deposited weld metal was 1.75% under these specifications. The required warning was as follows:

13.5 Each coil with support, spool or drum shall have the following caution label *as a minimum*, permanently affixed to the body of the liner, spool or drum in a prominent position and in legible type. Coils without support shall have a tag bearing the following caution lable in legible type securely attached to both ends of the coil:

> CAUTION
>
> Welding may produce fumes and gases hazardous to health. Avoid breathing these fumes and gases. Use adequate ventilation. See USA Standard Z49.1, "Safety in Welding and Cutting" published by the American Welding Society.

ASME Specifications For Mild Steel Electrodes For Flux-Cored Arc Welding, SF A–5.20.13.5 (emphasis supplied).

The parties agree that Unicore V–70 wire met these specifications—it was designed to meet the specifications and Unicore has generally advertised the wire as meeting the specifications. The wire purchased by TVA was the same V–70 wire that Unicore makes for and sells to all of its customers. Unicore took no extra or special steps or precautions to fulfill TVA requirements.

The V–70 wire sold to TVA carried the minimum warning recommended by ASME specifications on each spool. Unicore did not at any time inspect the Bellefonte or any other TVA job site to determine if the V–70 wire was being used correctly or if adequate ventilation was being provided.

At the time Whisenhunt was welding with V–70 wire at Bellefonte, TVA provided him with no special ventilation or exhaust facilities, although the room where Whisenhunt worked was large and had air vents. According to exhibits cited by plaintiffs, TVA knew of the importance of using local exhaust systems for ventilation purposes and was using such systems at several of its plants at the time of Whisenhunt's injury.

The record also shows that Whisenhunt had applied for and was receiving Federal Employees' Compensation Act benefits from the Department of Labor, Office of Workers' Compensation Programs, thereby legally exempting TVA from any liability to Whisenhunt.

### Disposition

We now affirm the holdings and judgment of the District Court.

 We note at the beginning of this disposition section that the parties elected to stipulate the facts. Under this circumstance, the District Judge was bound and we are bound by the record just recited above. Critical to disposition are the following facts: 1) Unicore was the manufacturer of welding wire which gave off the fumes which occasioned Whisenhunt's paralysis, 2) Unicore's warning label attached to its product was consistent with the "minimum" warning recommended by the American Society of Mechanical Engineers, and 3) The $625,000 liability for which plaintiff seeks indemnity was assumed by plaintiff's insurers without any trial or any court order or any notice to TVA. Under these facts our review of Alabama law of torts leads us to affirm the District Judge's dismissal of Unicore's suit.

Alabama law analyzes problems involving two putative tort-feasors involved in an indemnification dispute arising out of a personal injury cause of action in terms of active versus passive negligence. The seminal case is *Mallory S.S. Co. v. Druhan*, 17 Ala.App. 365, 84 So. 874 (1920). In that case a stevedore was injured when a crane furnished by a ship fell on him due to a rotted wooden block used to support the crane. The insurer of the stevedore's employer paid a claim for his injuries and then the insurer filed suit seeking indemnification from the ship which owned and furnished the offending crane and block. At trial the jury found for the insurer. On Mallory's appeal, the Alabama Court of Appeals held:

Where there is a bailment for the mutual benefit of the parties, as for hire, there is imposed on the bailor, in the absence of a special contract or representation, an obligation that the thing or property bailed for use shall be reasonably fit for the purpose or capable of the use known to be intended. 6 C.J. 1117, § 52. It has been held that the manufacturer and seller of an elevator impliedly warrants that the elevator would be suitable and safe for use. *Otis Elevator Co. v. Cameron* (Tex.Civ.App.) 205 S.W. 852. Therefore, in furnishing the derrick and block under the circumstances of this case, the defendant impliedly warranted that they would be suitable for the purpose for which they were furnished. This warranty was found to have been violated by the defendant, and this finding will not be disturbed.

The plaintiff seeks indemnity on account of the breach of this warranty. An employer, against whom recovery has been had for injury to his employe, may, notwithstanding his negligence in not inspecting, enforce indemnity against one who is under obligation to him, as in this case, to furnish suitable appliances, the breach of which obligation caused the injury. The employer's negligence in failing to inspect is only passive; that of the one furnishing the appliance is active. *Otis Elevator v. Cameron, supra.* The exceptions to the rule that indemnity will not be allowed among joint wrong-

doers are that a joint wrongdoer may claim indemnity where he has not been guilty of any fault, except technically or constructively, or where both parties are at fault, but the fault of the party from whom indemnity is claimed was the efficient cause of the injury. Where an injury results from a violation of a duty which one owes to another, the parties are not in pari delicto.

While an employer owes the duty to his employes of refraining from using defective appliances furnished by a third person under the circumstances of this case, the primary duty of furnishing safe appliances rests upon the third person, and he must indemnify the employer. *Boston Woven Hose & Rubber Co. v. Kendall,* 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781, 86 Am.St.Rep. 478; *Alaska S.S. Co. v. Pacific Coast Gypsum Co.,* 71 Wash. 359, 128 Pac. 654; *Fidelity & Casualty Co. of N.Y. v. Northwestern Telephone Exchange Co.,* 140 Minn. 229, 167 N.W. 800; *Hart v. Noret,* 191 Mich. 427, 158 N.W. 17, L.R.A. 1916F, 83; *Pennsylvania Steel Co. v. Washington & Berkley Bridge Co.* (D.C.) 194 Fed. 1011; *Aberdeen Construction Co. v. City of Aberdeen,* 84 Wash. 429, 147 Pac. 2; *Geo. A. Fuller Co. v. Otis Elevator Co.,* 245 U.S. 489, 38 Sup.Ct. 180, 62 L.Ed. 422; *Oceanic Steam Navigation Co. v. Compania Transatlantic Espanola,* 134 N.Y. 461, 31 N.E. 987, 30 Am. St.Rep. 685. These exceptions to the general rule that no right of contribution or indemnity exists in favor of one joint tort-feasor against another are recognized in Alabama. *Vandiver & Co. v. Pollak,* 97 Ala. 467, 12 South. 473, 19 L.R.A. 628; *Huey v. Dykes* (Sup.) 203 Ala. 231, 82 South. 481.

17 Ala.App. 365, 84 So. at 877–78.

The *Mallory S.S.* case has been frequently cited and never overruled. Unicore can appropriately cite *Mallory S.S.* as its basis in law for this suit where it alleges that TVA was guilty of "active negligence" whereas it asserts its failure to warn was merely "passive negligence." Our analysis of the stipulated facts in this case, how-

ever, leads to a contrary view of Unicore's role in the active versus passive dispute. In a much more recent case than *Mallory,* the Alabama Supreme Court discussed liability of a manufacturer who sold a defective product:

> In the case before us, Sherman, charged with active negligence by negligently designing the machine causing Norris' injury, is attempting to implead Gadsden, Norris' employer. This is not permitted. Title 26, § 272, Code of Alabama 1940. This statute provides immunity of the employer from liability for injuries to his employee arising out of the course of employment. *While an employer may implead the manufacturer of a defective product causing injuries to his employee, the reverse is not true. Mallory S.S. Co. v. Druhan,* 17 Ala.App. 365, 84 So. 874 (1920). In *Mallory* the court stated:

> > "While an employer owes the duty to his employ[ee] of refraining from using defective appliances furnished by a third person ... the primary duty of furnishing safe appliances rests upon the third person, and he must indemnify the employer."

> Sherman contends *Mallory* acknowledges exceptions to the rule that Alabama does not recognize the right of indemnification among joint tortfeasors. However, Sherman overlooks the fact that *Mallory* also said, *"The employer's negligence in failing to inspect is only passive; that of the one furnishing the appliance is active."*

*Sherman Concrete Pipe Machinery, Inc. v. Gadsden Concrete & Metal Pipe Co., Inc.,* 335 So.2d 125, 127 (Ala.1976) (emphasis added).

It appears clear to us that in comparison to the rule of *Sherman Concrete Pipe,* Unicore is in the shoes of the Sherman Concrete Pipe company as the party guilty of "active" negligence, whereas TVA's role in this analysis would have to be regarded as "passive."

We have also considered the possibility that Alabama might accept the position concerning indemnity between tortfeasors adopted by the American Law Institute in its Restatement (Second) of the Law of Torts:

### § 886B. Indemnity Between Tortfeasors

(1) If two persons are liable in tort to a third person for the same harm and one of them discharges the liability of both, he is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.

(2) Instances in which indemnity is granted under this principle include the following:

(a) The indemnitee was liable only vicariously for the conduct of the indemnitor;

(b) The indemnitee acted pursuant to directions of the indemnitor and reasonably believed the directions to be lawful;

(c) The indemnitee was induced to act by a misrepresentation on the part of the indemnitor, upon which he justifiably relied;

(d) The indemnitor supplied a defective chattel or performed defective work upon land or buildings as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

(e) The indemnitor created a dangerous condition of land or chattels as a result of which both were liable to the third person, and the indemnitee innocently or negligently failed to discover the defect;

(f) The indemnitor was under a duty to the indemnitee to protect him against the liability to the third person.

We have analyzed the facts of this case against the standards quoted above and find we would reach the same result as we have reached under current Alabama law. We find no "unjust enrichment" of TVA in this case. The injured party, Whi-senhunt, was a TVA employee and as such has recovered federal employee compensation from TVA. TVA thereby became immune to further damages to Whisenhunt. 5 U.S.C. § 8116(c) (1982). As to the lettered instances cited in § 886B of the Restatement (Second), only (e) even arguably applies. As to (e), we hold that the "dangerous condition" was created by Unicore's furnishing a dangerous product without adequate warnings as to its inherent dangers.

### The "Special Relationship" Issue

As to appellants' claim resting on an assertion of a "special relationship" with TVA, we are able to point to no facts in this record upon which said "special relationship" could be based. In fact Unicore was a supplier to Hobart, which sold the offending material to TVA. By pointing this out, we do not mean to do more than emphasize the remoteness of Unicore from any "special relationship" context.

The judgment of the District Court is affirmed.