64 F.3d 663
 76 A.F.T.R.2d 95-6001, 95-2 USTC P 50,464
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Herbert I. GOULDER, Executor of the Estate of Adolph P.
Goulder, deceased, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 93-3832.
 United States Court of Appeals, Sixth Circuit.
 Aug. 9, 1995.
 
 On Appeal from the United States District Court for the Northern District of Ohio, No. 92-01318; Laurie, Judge.
 N.D.Ohio, 1993 WL 316002.
 REVERSED.
 Before: ENGEL, MARTIN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Herbert I. Goulder, executor of the estate of Adolph P. Goulder, appeals from a grant of summary judgment in favor of the Internal Revenue Service in this suit for a refund of taxes paid. For the reasons set out below, we reverse.
 
 
 2
 * In 1969, Adolph P. Goulder entered into a general partnership known as Apartment Living Associates ("the Partnership"). In 1970, the Partnership purchased a residential apartment building in East Cleveland, Ohio. In connection with this purchase, the Partnership assumed a non-recourse loan (secured by a mortgage on the apartment building), guaranteed by the Department of Housing and Urban Development (HUD). The original mortgagees subsequently assigned HUD the note, mortgage, and all other security instruments pertaining to the building. The Partnership rented the apartments in the building to tenants. It collected security deposits and rent from the tenants, and periodically made distributions of cash to the partners.
 
 
 3
 In 1977, the Partnership defaulted on its non-recourse loan, and HUD began foreclosure proceedings. HUD appointed a receiver to manage the apartment building. On October 28, 1978, Adolph Goulder died and his estate became a partner in the Partnership. As a result of Adolph Goulder's death, the estate benefitted from a stepped-up basis in the decedent's interest in the partnership.[1]
 
 
 4
 On February 5, 1980, HUD sold the apartment building at foreclosure sale. The sale resulted in ordinary income and long-term capital gain to the Partnership. Herbert Goulder, the executor, paid income tax on the estate's share of the gain.
 
 
 5
 After the sale of the building in 1980, the Partnership no longer held any legal or equitable title to the building. It did not receive any rents or other income from the building. The Partnership did not own any other business or property, and did not engage in any business venture.
 
 
 6
 In 1980, the Partnership distributed the Partnership assets to the partners. All assets were distributed, except for those that the Partnership retained as representing tenants' security deposits. The Partnership did not distribute the security deposits in 1980 because it believed that HUD had a claim to the deposits, which the Partnership might be obligated to pay. In 1981, the Partnership determined that HUD would not claim the security deposits. The managing partner distributed the remaining security deposits to the partners around April 14, 1981.
 
 
 7
 Upon distribution of the Partnership's assets in 1980, the estate suffered a capital loss, due to its stepped-up basis and the decline in value between 1978 and 1980. It attempted to claim the loss for 1980. The IRS disallowed the loss. It agreed that the estate could claim a loss when the partnership terminated, but the IRS contended that the termination event occurred in 1981, due to the distribution of the security deposits, and so the loss could only be claimed in 1981. The Partnership had no gains in 1981 to offset the loss.
 
 
 8
 In September 1991, Goulder filed a claim with the Internal Revenue Service for a refund of income tax previously paid, plus interest, in the amount of $36,228.90. When the IRS failed to notify Goulder of disallowance of the refund within six months, Goulder sued for a refund in federal district court. See I.R.C. 6532(a)(1).
 
 
 9
 In the district court, the parties agreed to a Magistrate Judge's jurisdiction, pursuant to 28 U.S.C. Sec. 636(c). The parties further agreed to dispose of their case by cross-motions for summary judgment. In accord with this agreement, and in preparation for the June 9, 1993 hearing, the parties agreed to stipulate to certain facts. On March 17, 1993, the IRS and Goulder filed their joint stipulation with the court. The stipulation included the following paragraph:
 
 
 10
 During 1981 the Partnership neither operated or carried on any business, financial operation, or venture, having ceased any such activity prior to the beginning of such year.
 
 
 11
 On June 9, 1993, the Magistrate granted the IRS's motion for summary judgment, and denied Goulder's motion.
 
 II
 
 12
 We review de novo a grant of summary judgment based on stipulated facts and affidavits. Corea v. Welo, 937 F.2d 1132, 1135 (6th Cir. 1991); See also Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir.), cert. denied, 498 U.S. 848 (1990).
 
 
 13
 Section 731(a)(2) provides a deduction for a loss incurred in the liquidation of the partnership. I.R.C. Sec. 731(a)(2). Goulder contends that the stipulation makes it clear that the partnership interest was terminated and liquidated in 1980. After all, one can hardly be considered to have received partnership proceeds from a non-existent partnership. Two sections govern the issue of when a partnership has terminated. Section 708(a) provides that "an existing partnership shall be considered as continuing if it is not terminated." I.R.C. Sec. 708(a). As to when a partnership is terminated, the Code states that "[f]or purpose of subsection (a), a partnership shall be considered as terminated only if - (A) no part of any business, financial operation, or venture of the partnership continues to be carried on by any of its partners in a partnership." I.R.C. Sec. 708(b)(1).
 
 
 14
 The IRS studiously avoids discussing the stipulation at any length. This is understandable, since the stipulation tracks the language of Section 708(b)(1). Instead, the IRS asks that the stipulation, which is straightforward, be read in "context." See Appellee's Brief at 19 ("But the Stipulation must be understood in the context of the entire set of uncontested facts. When so understood, it is apparent that the stipulation was merely referring to the cessation of taxpayer's primary business activity.") See also Appellee's Brief at 10, 18, and 19 (speaking of the "primary business activity").
 
 
 15
 "Stipulations voluntarily entered by the parties are binding, both on the district court and on us." Federal Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co., 942 F.2d 1032, 1038 (6th Cir. 1991). See also Estate of Quirk v. Commissioner, 928 F.2d 751, 758-59 (6th Cir. 1991); Unicore, Inc. v. Tennessee Valley Auth., 768 F.2d 109, 112 (6th Cir. 1985). Therefore, the Magistrate Judge's conclusion that "the retention of funds to pay off obligations of the partnership and the subsequent distribution of the remainder of those funds to the partners must be considered 'part of a business, financial operation, or venture of the partnership"' is erroneous. To the contrary, the stipulation provides that "[d]uring 1981 the Partnership neither operated or carried on any business, financial operation, or venture, having ceased any such activity prior to the beginning of such year." (Emphasis added). An appellate court must be diligent in enforcing the full scope of stipulation absent extraordinary circumstances. See Quirk, 928 F.2d at 759. "If a trial judge can, as here, ignore a clear stipulation of the parties, the incentive to enter stipulations is eliminated." St. Paul Fire and Marine Ins., 942 F.2d at 1038. See Quirk, 928 F.2d at 759 ("It would seem that if parties could challenge their prior stipulations at will, stipulations would lose much of their purpose.").
 
 
 16
 The reading offered by the IRS is simply implausible. The stipulation is unequivocal: "[T]he Partnership neither operated or carried on any business, financial operation, or venture, having ceased any such activity prior to the beginning of such year." There is no statement that only its "primary" business activity ceased. In fact, as Goulder asserts, operating the apartment building was its entire business activity. We decline to review the stipulation in anything other than the straightforward manner in which it reads.
 
 
 17
 The IRS also offers a comprehensive review of the inadequacies of Goulder's argument. Absent the stipulation, this may have been persuasive. Section 761(d) of the Code states that "[f]or purposes of this subchapter, the term 'liquidation of a partner's interest' means the termination of a partner's entire interest in a partnership by means of a distribution, or a series of distributions, to the partner by the partnership." I.R.C. Sec. 761(d). See also Treas. Reg. Sec. 1.761-1 ("Where a partner's interest is to be liquidated by a series of distributions, the interest will not be considered as liquidated until the final distribution is made."). The key phrase in Section 761(d), for our purposes, is the last: "to the partner by the partnership." Whatever the 1981 distributions were they were not to a "partner" by a "partnership," since, as the stipulation and the Code make clear, the partnership ceased to exist in 1980.
 
 
 18
 Finally, there is no per se rule that the mere retention of certain assets or management of particular activities in anticipation of liabilities amounts to a continuation of a partnership. See, e.g., Barran v. Commissioner, 334 F.2d 58 (5th Cir. 1964) (partnership terminated, although it retained a piece of land, and sold a half interest for $17,500); La Rue v. Commissioner, 90 T.C. 465 (1988) ("only activity of the partnership was defense of the NYSE lawsuit ... [t]hat, however, does not change the fact that the partnership no longer had any business or assets"); Sargent v. Commissioner, 29 T.C.M. (CCH) 941 (1970). To the contrary, those cases holding that a partnership remained active feature far more activity than a mere retention of an asset in anticipation of specific liabilities. See, e.g., Estate of Skaggs v. Commissioner, 75 T.C. 191 (1980) (partnership continued to grow and sell crops and operate a farm), aff'd, 672 F.2d 756 (9th Cir.), cert. denied, 459 U.S. 1037 (1982).
 
 
 19
 The IRS agreed to a stipulation that tracked the statutory language describing the termination of a partnership. The IRS also stipulated that the money retained by the partnership was the tenants' security deposits, which the partnership assumed that HUD would seek to collect.[2] Finally, there is no per se rule providing that the retention of an asset in anticipation of a debt constitutes the continuation of a partnership, particularly where the IRS has stipulated that the partnership has already terminated. Simply stated, one cannot be a partner in, have an interest in, or receive proceeds from, a partnership that does not exist.
 
 III
 
 20
 The judgment of the district court is REVERSED and the matter is REMANDED for proceedings consistent with this opinion.
 
 
 
 [1]
 The basis was stepped-up to the fair market value at the date of death, pursuant to I.R.C. Sec. 1014
 
 
 [2]
 We recognize that the partnership appears to have escaped liability for these deposits, either through HUD's incompetence or its own malfeasance. Nonetheless, the Commissioner does not dispute that the partnership was in fact retaining the money to pay off this liability, and that, through some good fortune, the partnership escaped liability